UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LADAWN KATHRINE KARLSSON-HAMMITT,

                                  Plaintiff,

      v.                                          **DECISION AND ORDER**
                                                           13-CV-916S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

      1.      Plaintiff Ladawn Kathrine Karlsson-Hammitt challenges an Administrative Law Judge's ("ALJ") decision, dated February 24, 2012, wherein the ALJ determined that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act. She now contends that this determination is not based upon substantial evidence, and reversal is warranted.

      2.      Plaintiff protectively filed an application for supplemental security income on May 11, 2010, alleging disability beginning May 1, 2008. The application was initially denied on September 15, 2010, and Plaintiff was granted a hearing on that denial. She testified before the ALJ on February 14, 2012. The ALJ issued a decision denying Plaintiff's application on February 24, 2012. The Appeals Council denied Plaintiff's request for review on July 25, 2013, rendering the ALJ's determination the final decision of the Commissioner. Plaintiff filed the instant action on September 10, 2013.

      3.      Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Commissioner filed a reply. Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert denied*, 459 U.S. 1212 (1983).

5.      To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. The claimant has the burden of proof as to the first four steps, and the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since May 11, 2010, the application date (R. 18);[1] (2) Plaintiff's status-post cerebrovascular

---

[1] Citations to the underlying administrative record are designated as "R."

accident with memory loss and depressive disorder were severe impairments (R. 18); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment under the regulations (R. 18-19);  (4) Plaintiff had the residual functional capacity ("RFC") to follow and understand instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others and adequately deal with stress, which did not preclude her from performing her past relevant work as a metal fabricator.  (R. 19-23.)

10. Plaintiff argues that, in assessing Plaintiff's RFC, the ALJ erred in failing to evaluate the opinions of consultative psychologist Sandra Jensen, Ph.D. and State Agency review psychiatrist H. Tzetzo using the six factors under 20 C.F.R. § 416.927(d).  (Pl's Mem of Law at 11-16, 16-18.)

Initially, the ALJ expressly stated in his decision that he had considered the opinion evidence in accordance with 20 C.F.R. § 416.927(d).  (R. 23.)  Moreover, while the ALJ is required to consider these factors, "[t]he fact that the ALJ did not specifically discuss all of [them] . . . does not require reversal."  Hutton v. Astrue, No. 09-CV-6026 CJS, 2010 WL 1707521 at *12 (W.D.N.Y. Apr. 26, 2010) (citing Terreri v. Astrue, No. 07-CV-277-JTC, 2009 WL 749860 at * 5-6 (W.D.N.Y. Mar. 18, 2009), aff'd, 368 Fed. Appx. 204, 2010 WL 726726 at *1 (2d Cir. Mar 3, 2010)).  Here, it is clear that the ALJ considered the relevant factors when assessing the medical opinions of Tzetzo and Jensen, although he did not expressly walk through each of the six factors for each opinion.

Furthermore, the ALJ's RFC assessment of Plaintiff's mental impairments is supported by substantial evidence in the form of Tzetzo's mental status examination and Jensen's consultative opinion.  It is well settled that an ALJ is entitled to rely upon the

opinions of the State Agency's medical and psychological consultants, since they are qualified experts in the field of Social Security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913)(c), and 416.927(f)(2). Moreover, the opinions of consultative physicians and State Agency consultants can constitute substantial evidence where, as here, their opinions are consistent with the other evidence in the record. See Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995); see also Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983).

Specifically, Jensen conducted a consultative examination of Plaintiff in August 2010 and opined that Plaintiff could follow and understand instructions, learn new tasks, perform both simple and complex tasks independently, maintain attention and concentration, maintain a regular schedule, make appropriate decisions, relate adequately with others, and adequately deal with stress. (R. 19, 198-202). Similarly, Tzetzo reviewed the evidence in the record and completed a Psychiatric Review Technique ("PRT") form and a Mental Residual Functional Capacity ("MRFC") form in September 2010. He opined that Plaintiff had the ability to follow and understand instructions, learn new tasks, perform both simple and complex tasks independently, maintain attention and concentration, maintain a regular schedule, make appropriate decisions, relate adequately with others and adequately deal with stress. (R. 23, 230-247.)

As the ALJ discussed, the opinions of Jensen and Tzetzo were consistent with the other evidence in the record related to Plaintiff's mental impairments. (R. 19-23.) For instance, the ALJ discussed Plaintiff's reported daily activities, which included being able to take care of her own grooming, perform minor household chores, occasionally go to the store for food, and that she was able to follow instructions and get along with others. (R. 19, 146-154). He also noted that Plaintiff was unable to think of any depression symptoms

at the hearing. (R. 20). The ALJ discussed further Plaintiff's treatment records related to her stroke (and related memory loss), pointing out that the medical findings and diagnoses were generally mild, she was treated conservatively, and, at times, was not compliant with her prescribed treatment plans. (R. 19-23.)

Despite the above, Plaintiff argues that Jensen's opinion should have been discounted because it was rife with inconsistencies. She points out, for instance, that while Jensen opined that Plaintiff suffered minimal mental limitations overall, she also "noted a laundry list of observations that clearly indicate that [Plaintiff] has psychiatric problems that cause non-exertional limitations." (Pl's Mem of Law at 13-14.) The Court finds this argument unavailing for several reasons. First, the "laundry list of observations" Plaintiff refers to were observations that Jensen made in the course of administering an IQ test to Plaintiff and were specifically related to Plaintiff's response to that test. (R. 199.) Second, an ALJ is not obligated to reconcile every inconsistency in the record. See Mongeur, 722 F.2d at 1040 (it is "not require[d] that [the hearing officer] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."). Third, Jensen's conclusion overall was consistent with the other evidence in the record, as discussed above.

Similarly, the Court finds no merit to Plaintiff's argument that the ALJ erred by failing to include in his RFC assessment all of the limitations assessed by Tzetzo. (Pl's Mem of Law at 14, citing R. 240, 245.) Plaintiff points out that while the ALJ relied on Tzetzo's opinion when assessing Plaintiff's RFC, he did not take into account Tzetzo's specific opinion that Plaintiff was "moderately limited" in her activities of daily living and social functioning, her ability to complete a normal workday, and to respond appropriately to work

changes. (Pl's Mem of Law at 14-15, citing R. 240, 245). The Court rejects this argument. While Tzetzo checked off the "moderately limited" box in the particular aforementioned area on his standard-form PRT. (R. 240, 245), he ultimately assessed that Plaintiff "is capable of all activities of daily living and managing her money with no restrictions." (R. 246). Tzetzo acknowledged that while the evidence in the file showed that Plaintiff suffered from some psychiatric limitations, she still retained the ability to follow and understand instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others and adequately deal with stress all within normal limits. (R. 246.) This conclusion was consistent with Jensen's opinion and with the other evidence in the record, and therefore properly relied upon by the ALJ in determining Plaintiff's RFC.

As a final matter, the Court rejects Plaintiff's argument that the ALJ erred in affording the opinions of Jensen and Tzetzo more weight than the opinion of her treating physician, Qamrunnisa Rahman, M.D. (Pl's Mem of Law at 14, 15). It is well-settled that the ALJ must give controlling weight to the opinion of a treating physician if it is well-supported by the medical record and is not inconsistent with other substantial evidence. See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Because, as the ALJ noted, Dr. Rahman's opinion was internally inconsistent and inconsistent with the opinions of Jensen and Tzetzo, the ALJ properly discounted her opinion assessing significant functional limitations.

11. Next, Plaintiff argues that the ALJ's RFC finding is flawed because it fails to take into account all of Plaintiff's mental and physical impairments. (Pl's Memo of Law at 16-18; Pl's Reply at 1-3).

To properly ascertain a claimant's RFC, an ALJ must assess a claimant's exertional capabilities, and must also consider her non-exertional limitations. 20 C.F.R. §§ 404.1545(b), 404.1569a, 404.1545(b), 404.1569a. When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities will not suffice. Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing Ferraris, 728 F.2d at 587).

For the reasons discussed above, the Court is satisfied that Plaintiff's non-exertional (mental) limitations are sufficiently accounted for in the ALJ's RFC finding.

Likewise, the Court finds that the ALJ's RFC determination also properly accounts for Plaintiff's exertional (physical) limitations. While Plaintiff points to some evidence in the record showing that Plaintiff experienced, at times, diminished grip strength and back pain and that she was diagnosed as morbidly obese, the evidence in the record, read as a whole, does not support a finding that Plaintiff suffered any significant physical limitations resulting from any physical conditions. As the ALJ noted, Donna Miller, D.O. evaluated Plaintiff in August 2010 and opined that she had "no significant physical limitations." (R. 20, 196.) This was based on her examination of Plaintiff, at which time she reported that Plaintiff had a normal gait, full strength, normal muscle tone with no atrophy, intact sensation, intact hand and finger dexterity with full grip strength bilaterally, as well as unremarkable finger to nose testing, rapid alternating movements, and heel to shin testing. (R. 195-196.) Additionally, Plaintiff's treatment records throughout the relevant time period reveal either unremarkable or only mild physical examination findings. (R. 261, 269, 272, 280, 336.)

12. Plaintiff also argues that remand is warranted because the ALJ failed to consider Plaintiff's obesity at steps two through five of his sequential analysis. (Pl's Mem

of Law at 19-21.)

The Court rejects this argument because there is nothing in the record -- aside from general references to Plaintiff's weight in her treating records and the simple diagnosis of obesity (R. 195, 199, 215, 260-61, 269-70, 275, 280, 318, 337) -- that indicates that Plaintiff's weight, separately or in combination with her other ailments, significantly limits her ability to do basic work activities beyond that which the ALJ found.  Indeed, this Court must be "[m]indful that a lack of evidence of severe impairment constitutes substantial evidence supporting a denial of benefits."  Martin v. Astrue, 337 F. App'x 87, 89 (2d Cir. 2009) (rejecting contention that obesity should have been considered a severe impairment because plaintiff's obesity was mentioned "only four times" and there was "no evidence of a severe impairment limiting work ability").

Moreover, while the ALJ did not explicitly discuss Plaintiff's obesity in his decision, he was certainly aware of it because he questioned her briefly about it at the hearing.  (R. 50-51.)  Additionally, Plaintiff's weight is referenced in her medical records, which the ALJ relied on in formulating Plaintiff's RFC.  An ALJ's final determination can constitute an appropriate consideration of the effects of obesity if, as here, it properly weighs evaluations by doctors that have accounted for the claimant's obesity.  See, e.g., Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) ("Because her doctors must also be viewed as aware of [the claimant's] obvious obesity, we find that the ALJ's adoption of their conclusions constitutes a satisfactory if indirect consideration of that condition.").

13.   Plaintiff also argues that the ALJ erred by failing to provide clear reasons for discounting her credibility, as required under SSR 96-7p and 20 C.F.R. § 416.929.  (Pl's Mem of Law at 22-24.)

The Commissioner has established a two-step process to evaluate a claimant's

testimony regarding his or her symptoms. First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility. See Matejka v. Barnhart, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005); 20 C.F.R. § 416.929.

The regulations outline factors to be considered by the ALJ in conducting the credibility inquiry, including, among other things, the claimant's daily activities, any treatment, other than medication, that the claimant has received, and other factors concerning the claimant's functional limitations and restrictions as a result of the symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vii); see also Meadors v. Astrue, 370 F.App'x 179, 184 n.1 (2d Cir. 2010). The Commissioner's rulings provide that "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonable be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of the symptoms were "not credible to the extent they are inconsistent with the above [RFC] assessment." (R. 22.) This determination is supported by substantial evidence.

In assessing Plaintiff's credibility, the ALJ first discussed how Plaintiff's subjective complaints were inconsistent with the objective medical evidence in the record. (R. 22). Specifically, he noted that while her treatment notes from Auburn Regional Medical Center reflect that she was assessed with a stroke in 2008 and that she subsequently complained to her medical providers of numbness in her left upper extremities, her sensation was intact to light touch during her physical examination. (R. 23, 281-305.) The ALJ also noted that various treatment notes showed that Plaintiff had not been entirely compliant with her medical providers' recommendations, which "suggest[ed] that the symptoms may not have been as limiting as [Plaintiff] has alleged[.]" (R. 23, 259-273, 274-80, 334-43).

The ALJ also considered Plaintiff's statements regarding her activities of daily living. Specifically, Plaintiff stated that she was able to groom herself and do minor household chores. She also stated that she was able to go to the store for food once or twice a month, was able to take a bus, could do some laundry, cooked, watched television and socialized with friends over the phone occasionally. (R. 19, 45-46, 146-154.)

Additionally, the ALJ considered Plaintiff's work history, noting that Plaintiff stopped working in 2003 (five years prior to her stroke in 2008) for reasons unrelated to her allegedly disabling impairments, namely for personal reasons related to her marriage. (R. 23, 39-40.) Contrary to Plaintiff's contention, an ALJ may consider a claimant's poor work history in evaluating her credibility. See Schaal v. Apfel, 34 F.3d 496, 502 (2d Cir. 1998); 20 C.F.R. § 416.929(c)(3).

Finally, the Court finds no merit to Plaintiff's claim that the ALJ erred by making his RFC determination first, and then finding her not credible to the extent her statements were inconsistent with his RFC finding. (Pl's Mem of Law at 24.) Plaintiff is correct that it is improper for an ALJ to discount a claimant's credibility simply because those symptoms

are inconsistent with an ALJ's predetermined RFC. See e.g., Gehm v. Astrue, No. 3:10-CV-1170, 2012 U.S. Dist. LEXIS 183103, 2013 WL 25976, *5 (N.D.N.Y. Jan. 2, 2013). That is not the case here though. The ALJ did not improperly question Plaintiff's credibility because it was inconsistent with a preconceived RFC assessment. Instead, the reasons for discounting Plaintiff's asserted symptoms were clearly and thoroughly articulated in his decision, as discussed above. See e.g., Diakogiannis v. Astrue, 975 F. Supp. 2d 299, 318-19 (W.D.N.Y. 2013) (determining ALJ's credibility assessment supported by substantial evidence where ALJ assessed plaintiff's subjective complaints "in the context of a comprehensive review of the entire medical record," despite use of boilerplate language that plaintiff's complaints were "inconsistent with the above residual functional capacity").

14.   Plaintiff also claims that the ALJ erred at step four of his analysis because he failed to properly consider the mental demands of her past relevant work, as required by SSR 82-62. (Pl's Mem of Law at 8-11.)

"Pursuant to both case law and [SSR] 82-62, in order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." Kerulo v. Apfel, 98 Civ. 7315, 1999 WL 813350 at *8 (S.D.N.Y. Oct. 7, 1999) (citations omitted); accord Snitzer v. Astrue, 09 Civ. 2705 (CBA), 2011 WL 1322274 at *10 (E.D.N.Y. Mar. 31, 2011).

Here, at step 4 of the analysis, the ALJ relied on his assessment of Plaintiff's RFC and her statements made telephonically on a Point of Contact form to conclude that she was able to perform her past relevant work as a metal fabricator, and was therefore not

disabled (R. 23.) Specifically, Plaintiff reported that she

> worked in an airplane parts factory placing parts into boxes according to customer orders. [She] used a parts mark machine to produce a parts number th[e]n hand[-]stamped the parts. [She] stood and walked 8 hrs, stooped 8 hrs, crouched 8 hrs., and handled and grabbed small and large objects 8 hrs. Heaviest weight lifted was 50 to 100 lbs, and most frequent weight lifted was 10 lbs.

(R. 166.) As the ALJ noted at step four, while Plaintiff reported during the point of contact telephone call that she could not remember the details of her previous work because of her stroke, she "seemed to remember many details" as she provided descriptions of her prior work, including her work as a metal fabricator. (R. 23, 166.)

Here, the ALJ properly looked to Plaintiff's detailed description of her past relevant work as a metal fabricator to determine the demands of her past job as such. See SSR 82-621982 WL 31386, at *3 (S.S.A. 1982) ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level[,] exertional demands and nonexertional demands of such work."). The ALJ then properly compared the demands of that job, as Plaintiff described them, to Plaintiff's RFC. (R. 23.)

In determining that Plaintiff could perform her past work as a metal fabricator, the ALJ rejected Plaintiff's claims that her memory problems resulting from her stroke prevented her from performing her past work as a metal fabricator. Indeed, SSA regulations expressly provide that "observations by our employees and other persons" will be treated as evidence. 20 C.F.R. § 416.929(c)(3) (June 13, 2011); see Schaal, 134 F.3d at 502. The ALJ was, thus, permitted to rely on his own observation that Plaintiff's memory appeared to be fine, which was consistent with the other substantial evidence in the record. At this stage of the inquiry, the burden still remained with plaintiff to show that she could not perform her prior work as a metal fabricator. See Jasinski v. Barnhart, 341 F.3d 182,

185 (2d Cir. 2003). Plaintiff challenges the ALJ's step four determination on the basis that she is incapable of performing the job of metal fabricator because it is listed in the Dictionary of Occupational Titles ("DOT") as a "skilled" job and the ALJ's RFC does not accommodate skilled work. (Pl's Mem of Law at 10, 17; Pl's Reply at 1-3) This argument is a red herring though because the distinction Plaintiff draws is irrelevant given that the ALJ assessed Plaintiff's ability to perform her prior work as a metal fabricator as *she actually performed it*, not as it was performed in the national economy. (R. 23.)

Thus, in light of plaintiff's own statements and the evidence in the record supporting Plaintiff's broad RFC, the Court finds that the ALJ's step 4 determination that Plaintiff could return to her prior work as a metal fabricator is supported by substantial evidence.

15.   For the foregoing reasons, and upon a review of the record as a whole, the Court concludes that the ALJ's determination is supported by substantial evidence.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED;

FURTHER, Defendant's Cross Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:   October 29, 2014
         Buffalo, New York

                                                    /s/William M. Skretny
                                                   WILLIAM M. SKRETNY
                                                        Chief Judge
                                                  United States District Court